

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
YANY'S GARDEN LLC and NARUL TONY
HACK,

                        Plaintiffs,                          **MEMORANDUM & ORDER**

                                                         18-CV-2813 (NGG) (RML)
        -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF BUILDINGS, NEW YORK
CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT,
RASSOUL AZARNEJAD, AMY MARCUS,
PHILLIP MATTOON, DENNIS ZAMBOTTI,
SCALA CONTRACTING CO. INC., NYCTL 2012-
A TRUST, THE BANK OF NEW YORK MELLON
AS COLLATERAL AGENT AND CUSTODIAN
FOR THE NYCTL 2012-A TRUST, and JOHN DOE
NUMBERS 1 THROUGH 10,

                       Defendants.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiffs Yany's Garden LLC ("Yany's Garden") and Narul Tony Hack bring this action against the City of New York ("NYC" or the "City"), the NYC Department of Buildings ("DOB"), the NYC Department of Housing Preservation and Development ("HPD"), Rassoul Azarnejad, Amy Marcus, Philip Mattera,[1] and Dennis Zambotti (collectively, the "City Defendants"), and Scala Contracting Co. Inc. ("Scala"), NYCTL 2012-A Trust ("NYCTL"), the Bank of New York Mellon as Collateral Agent and Custodian for the NYCTL 2012-A Trust ("BNY" and, together with NYCTL, the "Trust"), and John Does 1-10. (See Am. Compl. (Dkt.

---

[1] Philip Mattera, a DOB employee, was incorrectly named as "Phillip Mattoon" in the Amended Complaint. (See City Defs. Mem. in Supp. of Mot. to Dismiss ("City Defs. Mem.") (Dkt. 20-11) at 1.) The Clerk of Court is respectfully DIRECTED to amend the caption to reflect the correct spelling of Mr. Mattera's name.

6).) Plaintiffs assert claims arising out of an emergency declaration, emergency repair work, a tax lien, and judgment of foreclosure and sale issued against Plaintiffs' undeveloped property in Whitestone, Queens, New York (the "Property") under 42 U.S.C. § 1983 and various state law causes of action, including: Article 1, Section 6 of the New York Constitution, trespass, injury to property, wrongful conversion, intentional infliction of emotional distress, negligence, failure to protect, and illegal tax lien foreclosure. (See id.)

Currently before the court are motions to dismiss Plaintiffs' Amended Complaint by the Trust and the City Defendants. (See Trust Mot. to Dismiss ("Trust Mot.") (Dkt. 19); City Defs. Mot. to Dismiss ("City Defs. Mot.") (Dkt. 20).) For the following reasons, the Trust Defendants' motion is GRANTED and the City Defendants' motion is GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

A. Facts

The court takes the following statement of facts largely from Plaintiffs' Amended Complaint, the well-pleaded allegations of which the court generally accepts as true for purposes of the motions to dismiss. See N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

Plaintiffs are successive owners of the Property. On March 16, 2004, Narul Tony Hack, a resident of Bayside, Queens, acquired title to the Property: Queens County Tax Block 4541 Lot 10. (Am. Compl. ¶¶ 27, 42-43.) In November 2004, Hack began to construct a building on the Property, but he ceased construction in June 2005. (Id. ¶¶ 44-45.) Five years later, the Property remained undeveloped and consisted of an open basement foundation surrounded by a six-foot

plywood fence. (Id. ¶ 46.) Hack ultimately sold the Property to Yany's Garden, a New York LLC. (Id. ¶¶ 25-26, 29.)

Defendants DOB and HPD are departments of the City. (Id. ¶¶ 31, 32.) Defendants Azarnejad and Marcus are HPD employees. (Id. ¶¶ 33-34.) Defendants Mattera and Zambotti are DOB employees. (Id. ¶¶ 35-36.) Defendant Scala is a New York corporation with its principal place of business in Brooklyn, New York. (Id. ¶ 37.) Defendant NYCTL is a Delaware business trust created pursuant to a 2012 agreement between NYC and the Wilmington Trust Company. (Id. ¶ 38.) Defendant BNY is a New York banking corporation. (Id. ¶ 39.) Defendants John Doe 1-10 are unknown employees and agents of the Defendants. (Id. ¶ 40.)

On September 28, 2010, Mattera inspected the Property and found that it had been abandoned for four years and its open foundation and "out of plumb" fencing was an "Emergency condition pursuant to Section 28-215.1 of the NYC Administrative Code." (Emergency Decl.[2] (Dkt. 20-3); see also Am. Compl. ¶¶ 47, 75.) Consequently, Mattera issued an Emergency Declaration, which required: (1) the Property's open foundation to be filled; (2) the site to be graded; and (3) the replacement of the existing plywood fence with a chain link fence. (Am. Compl. ¶ 47; see also Emergency Decl.) Both Zambotti and Marcus allegedly signed-off on the Emergency Declaration. (Am. Compl. ¶¶ 48-49.) Scala performed the work ordered by that Declaration, and billed the City $17,011 for the work performed. (Id. ¶¶ 56, 78.) Azarnejad subsequently approved Scala's work. (Id. ¶ 50.)

---

[2] The Amended Complaint repeatedly incorporates the Emergency Declaration by reference. (See, e.g., Am. Compl. ¶¶ 47, 51, 56, 75-76, 79.) Therefore, the court may consider the Emergency Declaration in assessing the City Defendants' motion. See Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005) ("In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint.").

Plaintiffs allege that no Defendant provided Hack with notice of the Emergency Declaration or the work completed on the Property. (Id. ¶¶ 54, 57, 58, 60, 64, 69, 96.) The Amended Complaint does not state when Hack first became aware of the work completed pursuant to the Emergency Declaration.

In December 2010, a tax lien was placed on the Property. (Id. ¶ 79.) The City sold the tax lien to NYCTL in August 2012. (Id. ¶ 80.) On February 3, 2017, a judgment of foreclosure and sale was entered against the Property. (Id. ¶ 6.) Plaintiffs allege that Hack was not served with appropriate notice pursuant to this judgment. (Id. ¶ 11.) On October 3, 2017, a notice to amend the Property's street address was filed in the Queens County Clerk's Office. (Id. ¶ 13.) On May 11, 2018, NYCTL auctioned the tax lien to a purchaser who subsequently abandoned the purchase. (Id. ¶¶ 142-43.) On October 12, 2018, NYCTL resold the tax lien to an unnamed third party. (Id. ¶ 87.)

Plaintiffs allege that, as a result of Defendants' actions, Hack has difficulty functioning normally, and that he suffers from abdominal pain, digestive disorder, sleep deprivation, paranoia, anxiety, and depression. (Id. ¶ 88.)

### B. Procedural History

Plaintiffs filed their original complaint in this court on May 11, 2018. (Compl. (Dkt. 1).) Plaintiffs filed their Amended Complaint on November 27, 2018. (Am. Compl.) The Amended Complaint alleges multiple New York state law causes of action and one federal claim arising under 42 U.S.C. § 1983. (Id. ¶¶ 89-149.) Plaintiffs allege under 42 U.S.C § 1983 that Defendants: (1) discriminated against Hack in violation of the Equal Protection Clause of the Fourteenth Amendment by misapplying administrative procedure in issuing a September 2010 Emergency Declaration, (2) deprived Hack of his Fifth and Fourteenth Amendment right to a

hearing prior to issuing the September 2010 Emergency Declaration, and (3) conducted an unlawful seizure of Hack's property in violation of the Fourth Amendment through demolition of structures on the Property in October 2010. (Id. ¶¶ 95-97, 99, 104-05.)

The Trust and the City Defendants moved to dismiss on May 14, 2019 and May 15, 2019, respectively. (See Trust Mot.; City Defs. Mot.) Following various extensions of time, both motions were fully briefed by August 16, 2019. (See Corrected Reply Mem. in Further Supp. of Trust Mot. (Dkt. 31); Reply Mem. in Further Supp. of City Defs.' Mot. (Dkt. 32).) Scala was served on November 30, 2018 but has not appeared in the case. (See Returned Summons (Dkt. 35).)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The assessment of whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

"In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "Plaintiffs'

5

failure to include matters of which as pleaders they had notice and which were integral to their claim ... may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion." L–7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (citations omitted) (alteration adopted).

Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998). If the court takes judicial notice of a public record, it does so solely "to determine what statements [the public record] contained ... [,] not for the truth of the matters asserted." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis and citation omitted).

## III. APPLICATION

### A. Hack's § 1983 Claim

Hack asserts the sole federal claim under 42 U.S.C. § 1983, alleging an unlawful seizure in violation of the Fourth Amendment, deprivation of due process under the Fifth and Fourteenth Amendments, and discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.[3] (Am. Compl. ¶¶ 89-106.) The City Defendants contend that this claim is time-barred. (City Defs.' Mem. in Supp. of Mot. to Dismiss ("City Defs. Mem.") (Dkt. 20-11) at 7-8.) For the following reasons, the court agrees with the City Defendants.

---

[3] Though not alleged as enumerated counts against the Defendants, Plaintiffs' Amended Complaint also states that the court has federal question jurisdiction "pursuant to 42 U.S.C. §§ 1983, 1985, and 1986." (Am. Compl. ¶ 1.) To the extent that this assertion is intended to support claims under these provisions, the Amended Complaint does not support a claim under either 42 U.S.C. § 1985 or U.S.C. § 1986. A conspiracy in violation of 42 U.S.C. § 1985 must be "motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." Dolan v. Connolly, 794 F.3d 290, 296 (2d Cir. 2015) (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007)). Here, the Amended Complaint asserts only that Defendants intentionally treated Plaintiff differently from other similarly situated individuals, and that there is no rational basis for the difference in treatment. (Am. Compl. ¶ 104.) The Amended Complaint does not allege, however, that Hack is a member of a protected class or that Defendants were motived by a specific discriminatory animus. Consequently, any claim Plaintiffs raise under § 1985 fails. As a claim under 42 U.S.C. § 1986 is contingent on a valid § 1985 cause of action, Plaintiffs' § 1986 claim also fails. See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996).

A party asserting a § 1983 claim is bound by the statute of limitations for personal injury torts of the state in which the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387 (2007). In New York, the statute of limitations for personal injury torts is three years. Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (citing N.Y. C.P.L.R. § 214(5)). Here, Plaintiffs' § 1983 claim is based on Defendants' discrete acts, all of which occurred in 2010. (See Am. Compl. ¶¶ 89-106.) Plaintiffs did not file their initial complaint until May 11, 2018, more than seven years after the last relevant act occurred. (Compl.) Accordingly, the statute of limitations defense is apparent from the face of the complaint. See Powell v. Lab Corp., No. 19-215, 2019 WL 4892403, at *1 (2d Cir. Oct. 4, 2019) (summary order) (affirming dismissal of § 1983 claim filed in June 2017, based alleged injuries incurred from 1994 to 2013).

A § 1983 claim accrues when a plaintiff first "knows or has reason to know of the injury which is the basis of his action," Hogan v. Fischer, 738 F.3d 509, 518 (2d Cir. 2013) (citations omitted), even when "the full extent of the injury is not then known or predictable," Smith v. City of New York, 664 F. App'x 45, 47 (2d Cir. 2016) (summary order) (quoting Wallace, 549 U.S. at 391) (quotation marks omitted). Therefore, to survive a motion to dismiss, the Amended Complaint must plausibly allege that Hack did not know or have reason to know of Defendants' actions before May 11, 2015. The Amended Complaint does allege that Hack did not receive notice of the work done to the Property, nor any of Defendants' actions. (See Am. Compl. ¶¶ 54, 57, 58, 60, 64, 69, 96.) The Amended Complaint does not, however, allege when Hack first learned of the Defendants' actions pursuant to the Emergency Declaration. Charitably construed, Plaintiffs' argument seems to be that Hack's § 1983 claim did not accrue until he actually found out about Defendants' actions, presumably in or after 2015.

This argument presents an uphill battle for Plaintiffs, as Scala leveled and erected a new eight-foot chain link fence on the Property on October 18, 2010. (Id. ¶¶ 50, 56). At any time thereafter, had he visited the Property, Hack would have been aware of at least some of the work done. For Plaintiffs to state a plausible claim to relief, then, the court must accept that "at all relevant times, [Hack] owned and possessed the Property to the exclusion of rights of all others" (Am. Compl. ¶ 114) and was "within the city when the decision was made to declare an Emergency Condition" (id. ¶ 62), yet did not visit the Property for over four years after the demolition and construction was complete. The possibility that Hack lacked actual knowledge regarding his Property's condition for over four and a half years strains common sense. See Iqbal, 556 U.S. at 679 (assessing the plausibility of a claim "requires the reviewing court to draw on its judicial experience and common sense").

Regardless, Hack had reason to know the basis of his alleged injury, at the latest, when the NYC Department of Finance issued him a Statement of Account on June 10, 2011, see Quarterly Statement of Account, N.Y.C. Dep't of Finance, https://a836-pts-access.nyc.gov/care/search/commonsearch.aspx?mode=persprop (follow "BBL Search" hyperlink; then search Borough field for "(4) Queens", search Block field for "4541", and search Lot field for "10"; then follow "Property Tax Bills" hyperlink; then follow "Q1: June 10, 2011" hyperlink) (the "Statement of Account").

It is true that a court may not generally consider documents outside the complaint in considering a motion to dismiss. DePietro v. City of New York, 09-CV-932 (SLT), 2010 WL 449096, at *4 (E.D.N.Y. Feb. 2, 2010). However, the Statement of Account is a public record published by the NYC Department of Finance through the official website of the City of New York. See Statement of Account. The court may therefore take judicial notice of it for the

8

limited purpose of determining what statements it contains. See Force v. Facebook, Inc., 934 F.3d 53, 59 n.5 (2d Cir. 2019) (taking judicial notice of Facebook.com for the limited purpose of determining Facebook's stated representations about its policies and practices); United States v. Akinrosotu, 637 F.3d 165, 168 (2d Cir. 2011) (taking judicial notice of the official website of the Bureau of Prisons for the limited purpose of determining prisoner release date).

Moreover, the City Defendants' appended the Statement of Account to their motion, thereby placing Plaintiffs on notice that the court might consider it. See Frankfurt-Trust, 336 F. Supp. 3d at 205 (taking judicial notice of public records filed with the SEC when plaintiff was "put on notice by Defendants' proffer of the documents that the district court might consider them" (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)) (alteration adopted)). The City Defendants explicitly relied on the Statement of Account in their briefing (City Defs. Mem. at 7-8) and, in response, Plaintiffs did not raise a specific objection to the court's consideration of the document.[4] See Sharette v. Credit Suisse Int'l, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015) (granting defendants' request for judicial notice where plaintiff failed to contest the authenticity of defendants' proffered public documents or object to the court's consideration of them).

---

[4] Indeed, Plaintiffs do not acknowledge the Statement of Account except to assert that the "statute of limitations cannot run from the date or dates when the City Defendants mailed any statement or notice to Plaintiff Hack." (Id. at 9 (emphasis original).) As a legal matter, Plaintiffs are incorrect; the date of a mailing may constitute the accrual date of a § 1983 claim, see Leon v. Murphy, 988 F.2d 303, 309 (2d Cir. 1993) (affirming dismissal of § 1983 claim as time-barred because it accrued on the date notice was mailed). Regardless, arguing that a mailing cannot trigger accrual of a § 1983 claim is not an objection to the court's consideration of the Statement of Account.

Plaintiffs do—without mentioning the Statement of Account or any other specific document—correctly state the law that, on a motion to dismiss, "[a] district court can only consider the facts stated in the complaint and documents that are either attached to the complaint or incorporated into the complaint by reference." (Opp'n at 6 (citations omitted).) This statement of law, however, is not an argument against the inclusion of a specific public record submitted by Defendants nor an attack on the authenticity of the proffered document.

The Statement of Account contains a $17,011 charge for "Housing – Erp Demolition" and states, "You are entitled to protest the Emergency Repair Charge . . . by filing an objection in writing with the Department of Housing Preservation and Development (HPD)." (Opp'n at 4.) The NYC Department of Finance also included the $17,011 demolition charge in the Property's next three quarterly statements. See id. at hyperlink "Q2: August 26, 2011," hyperlink "Q3: November 18, 2011," hyperlink "Q4: February 24, 2012." These documents thus contain charges for "demolition" and "emergency repair" assessed against the Property and in Hack's name. See Statement of Account at 3.

As the owner of the Property (Am. Compl. ¶ 114), Hack had a legal obligation to pay property taxes assessed against it. Cty. of Suffolk v. First Am. Real Estate Sols., 261 F.3d 179, 195 (2d Cir. 2001). No notice is required to create this obligation. Id. ("The 'fair warning' required under the Due Process Clause is satisfied through the notice provided by the statute that establishes the obligation to pay property taxes."). The NYC Department of Finance is required to provide property owners with a statement of account (a tax bill) at regular intervals, N.Y.C. Admin. Code § 11-129, and failure to pay property taxes results in a property tax lien, id. § 11–301; see also Boyd v. J.E. Robert Co., No. 05-CV-2455 (KAM), 2012 WL 4718723, at *2 (E.D.N.Y. Oct. 2, 2012). To fulfill his obligation to pay taxes, Hack would therefore have had reason to review the tax incurred and to discover that the Property's otherwise roughly $200 quarterly tax assessment due July 1, 2011 included a $17,011 charge for demolition and emergency repair. See Statement of Account. Thus, by June 2011, Hack had reason to know the basis of his alleged injury: that Defendants performed "demolition" and "emergency repair" on the Property. This means that the statute of limitations ran in June 2014, well before Plaintiffs filed their complaint in this court.

The court therefore dismisses with prejudice Hack's § 1983 claims against the Trust[5] and the City Defendants. The only remaining federal claim, then, is Hack's § 1983 claim against Scala, who has not appeared and has not, therefore, raised a statute of limitations defense nor moved for dismissal.

### B. Plaintiffs' State Law Claims

Plaintiffs assert causes of action under Article 1, Section 6 of the New York Constitution and state-law trespass, injury to property, conversion, intentional infliction of emotional distress, negligence, failure to protect, and illegal tax lien foreclosure. (See Am. Compl. ¶¶ 107-49.) As an initial matter, Defendants did not seek dismissal of Hack's New York constitutional claim, and so it survives.

The court will address Plaintiffs' remaining state law claims in turn.

#### 1. Plaintiffs' Tort Claims Against the City Defendants[6]

First, Plaintiffs' state-law tort claims against the City Defendants are barred because Plaintiffs have not pleaded compliance with New York's notice-of-claim requirement. As a general matter, "state notice-of-claim statutes apply to state law claims in federal court." DeCarolis v. Town of Vienna, 322 F. App'x 25, 26 (2d Cir. 2009) (summary order) (citing Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999)). And, in New York, "[a] timely notice of claim is a condition precedent to filing a tort action against a municipality

---

[5] Because the court finds this claim to be time-barred, it does not address the question of whether the Trust Defendants acted under color of state law. It does, however, note its skepticism about this assertion.

[6] Plaintiffs do not specify which of the Defendants each claim is against. However, the court construes its state law claims of trespass, injury to property, wrongful demolition, conversion, intentional infliction of emotional distress, and failure to protect as against the City Defendants and Scala. The sections of the complaint laying out each of these claims do not mention the Trust, and only discuss actions taken by the City Defendants and Scala. (See Compl. ¶¶ 113-38.)

11

[or its officers]."[7] Llanes v. New York, No. 18-CV-3537 (JS), 2019 WL 4889258, at *5 n.6 (E.D.N.Y. Sept. 30, 2019) (citing Walker v. Vill. of Freeport, No. 15-CV-4646, 2016 WL 4133137, at *9 (E.D.N.Y. June 13, 2016)); see also N.Y. Gen. Mun. Law §§ 50-e, -i, -k. New York law requires a plaintiff to plead compliance with this requirement in the complaint. See Hardy, 164 F.3d at 793.

Plaintiffs have not pleaded compliance with New York's notice-of-claim requirement. Plaintiffs do not dispute this fact, but argue that they were not required to comply with the notice requirement because the City Defendants failed to serve notice on Mr. Hack as required by New York law. (Opp'n at 15 (citing N.Y. C.P.L.R. § 308).) Plaintiffs provided no support for the assertion that such notice from the City is "a prerequisite" to the triggering of the notice-of-claim requirement (see Opp'n at 15), and the court is not aware of any authority to that effect. Lack of proper notice by the City might, of course, constitute reasonable excuse for filing a late notice; the court may not make that determination, however, as requests to file a late notice of claim may only be granted by a New York court. N.Y. Gen. Mun. Law §§ 50-e; see also Crippen v. Town of Hempstead, No. 07-CV-3478 (JFB), 2009 WL 80311, at *17 (E.D.N.Y. Mar. 25, 2009) ("Section 50-e(7) permits only certain state courts . . . to consider and to grant an application for an extension of time." (emphasis in original)). This court cannot, therefore, grant Plaintiffs' request for leave to file a late notice of claim and toll the statute of limitations (see Opp'n at 15).

---

[7] "'[T]he requirements of Sections 50–e and 50–i are not conditions precedent to the commencement of an action against a [municipal] official or employee unless the [municipality] is required to indemnify such person,' and '[t]he [municipality's] duty to indemnify these employees turns on whether they were acting within the scope of their employment.'" Johnson v. Cty. of Nassau, No. 10-CV-6061 (JFB), 2014 WL 4700025, at *24 (E.D.N.Y. Sept. 22, 2014). Plaintiffs allege Defendants Rassoul Azarnejad, Amy Marcus, Philip Mattera, and Dennis Zambotti (collectively, the "Individual City Defendants") are all employees of the City, and assert claims against them arising only out of actions apparently taken in the scope of their employment. (See Am. Compl. ¶¶ 31-49.) Plaintiffs did not address this issue in their brief in opposition to the City Defendants' motion, and so, based on the allegations contained in the complaint, the court determines that the Individual City Defendants were all acting in the scope of their employment such that a notice of claim would be required under New York state law.

Plaintiffs' tort claims against the City Defendants are thus dismissed.

### 2. Plaintiffs' Claim for Illegal Tax Lien Foreclosure

The complaint does not explain the source of law allowing it to bring a claim of illegal tax lien foreclosure in this court, and the court is not aware of a cause of action by this name.

To the extent that Plaintiffs are challenging the foreclosure judgment entered by the state, the court does not have jurisdiction over that claim because of the Rooker-Feldman doctrine, which prohibits federal district courts from considering cases that "essentially amount to appeals of state court judgments," see Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014). There are four requirements for the application of Rooker–Feldman: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." Id. (citations and quotation marks omitted). All four of these factors are clearly established here. Plaintiffs are complaining about the results of a foreclosure proceeding in state court, and filed their complaint in this court long after judgment had been entered by that court. Granting Plaintiff relief on this claim, such as it is, would necessarily involve the court overturning the judgment of foreclosure entered by the state court.

Accordingly, the court dismisses Plaintiffs' claim for illegal tax lien foreclosure.

## IV. CONCLUSION

For the foregoing reasons, the Trust's (Dkt. 19) motion to dismiss is GRANTED and the City Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' § 1983 and state tort claims against the City Defendants are DISMISSED.

The Clerk of Court is respectfully DIRECTED to terminate Defendants NYCTL 2012-A Trust and the Bank of New York Mellon as Collateral Agent and Custodian for the NYCTL 2012-A Trust.

Additionally, Plaintiffs requested that they be given leave to move to amend their complaint should the court grant Defendants' motions. (Opp'n at 22-23.) They did not, however, specify the ways in which they would like to amend, and did not file a formal motion seeking to do so. To the extent the motion was raised in their brief, therefore, it is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: Brooklyn, New York
January 14, 2020

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge